SOUTHERN PAC. R. Co. *v.* TILLEY *et al.* SAME *v.* WALKER. SAME *v.* PATTERSON *et al.*

*(Circuit Court, S. D. California. March 17, 1890.)*

PUBLIC LANDS—DONATION TO RAILROAD.

    14 St. U. S. 292, granted to the Southern Pacific Railroad Company certain land, and provided that, in case any of said land should have been previously disposed of, the company should select other land in certain sections in lieu thereof. The secretary of the interior withdrew such sections, but afterwards allowed a homesteader to enter and obtain patent to a part of one of them. After the patent had issued, the company attempted to select this land, but was not allowed to do so. *Held,* that the company had no right to said land under the grant.

In Equity.
*Joseph D. Redding,* for complainant.
*Joseph H. Call,* for defendants.

ROSS, J. The land in controversy in this suit having been entered by the defendant Tilley as a homestead, and a patent therefor having been issued to him by the government, the complainant seeks to obtain a decree that the title thus conveyed is held in trust for it. Prior to the year 1874 the land was unsurveyed public land of the United States. In that year it was surveyed, and a plat of the survey filed in the local land-office. The source of the complainant's alleged right is the grant made to it by congress in the act passed July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the states of Missouri and Arkansas to the Pacific coast," by the Southern route, by which act the Southern Pacific Railroad Company was authorized to connect with the Atlantic & Pacific Railroad at such point near the boundary line of the state of California as they should deem most suitable for a railroad line to San Francisco, and, subject to certain conditions, exceptions, and limitations, was granted every alternate section of public land, not mineral, designated by odd numbers, to the amount of 10 alternate sections per mile on each side of such road, to which the United States should have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time such road should be designated by a plat thereof filed in the office of the commissioner of the general land-office;

and where, prior to said time, any of said sections or parts of sections should be granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, the act provided that other lands should "be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including the reserved numbers." 14 U. S. St. 292, 295.

The exceptions contained in the act need not be particularly referred to. The case shows that the Southern Pacific Company accepted the grant, complied with the conditions contained in it, and in subsequent acts upon the subject, and earned the granted lands. All of the land embraced in the primary or 20-mile limits of the grant vested in the company on the 3d day of January, 1867, which was the day the map of definite location of the road was filed in the office of the commissioner of the general land-office. But the land in controversy in this suit was not within those limits. It is a conceded fact that this land is within the indemnity or lieu limits of the grant. With respect to land thus situated, it has been repeatedly decided by the supreme court and by the circuit courts that no title thereto vested in the railroad company prior to its selection. The evidence in the case shows that the complainant never sought to select the land in dispute until November 19, 1887. On that day it embraced it in its indemnity list No. 2, and tendered to the officers of the local land-office all proper fees for selecting and listing the land, and securing a patent therefor. The officers of the land department refused to approve the selection; the reason, doubtless, being that the defendant Tilley had theretofore been permitted to enter the land as a homestead, upon which entry a patent had been issued. Prior to the homestead entry, however, and prior to Tilley's occupancy of the land, and his claiming it as a homestead, which occupancy and claim, it appears from the evidence, commenced June 28, 1870, the secretary of the interior made an order directing the commissioner of the general land-office " to withhold the odd sections within the granted limits of twenty miles on each side of said road, as shown on the map, [of definite location, filed January 3, 1867,] and also to withdraw the odd sections outside of the twenty miles, and within thirty miles of each side, from which the indemnity for lands disposed of within the granted limits is to be taken.    *   *   *"    This order was made March 27, 1867.    As will be observed, the order was to "withdraw " the odd·sections within the primary limits, and also the odd sections within the indemnity or lieu limits of the grant.    "Withdraw" from what?    Whether from sale, pre-emption, or homestead entry, or from all of these, does not expressly appear from the order.    In *Railway Co.* v. *Dunmeyer*, 113 U. S. 638, 5 Sup. Ct. Rep. 566, the supreme court said that "in the terminology of the laws concerning the disposition of the public lands of the United States each of these words has a distinct and well-known meaning." But the intention of the order doubtless was to direct the withdrawal of the lands referred to in it from any and every mode of disposition; and such

I think, is its true interpretation. But, notwithstanding the order, the secretary permitted the defendant Tilley to enter the particular piece of land in controversy as a homestead, awarded it to him, and caused a patent therefor to be issued to him. The effect of all this is the question for decision, and it seems to me to be of easy solution. Had the complainant sought to select the land in question under its grant prior to Tilley's entry, and the officers of the land department had refused to approve the selection, a very different question would be presented. But here there had been no attempt on complainant's part to select the land at the time of Tilley's entry, or at the time it was awarded and patented to him; and, as the land was within the indemnity or lieu limits of the grant, the complainant had then no right of any nature to that particular piece of land. Its grant could only be attached to it by selecting it under the direction of the secretary of the interior. Prior to such selection the land remained public land of the United States. It is true the order of withdrawal made by the secretary on the 27th of March, 1867, had not been in terms vacated, but the secretary had the same power to vacate it that he had to make it; and when he permitted Tilley to make his entry, and awarded the land in question to him, and issued him a patent therefor, he, in effect, annulled the order of withdrawal so far as that particular piece of land was concerned. In doing so, he violated no vested right of the complainant, for to that land the company had not then acquired any right of any nature. It had not selected it, and might never do so. There was, therefore, no legal reason why he should not allow the homestead entry. The act making the grant to the complainant did not direct the secretary of the interior to make any order withdrawing the lands that might fall within it from sale, preemption, homestead entry, or other disposition, and did not prescribe the effect to be given to such an order. It is not for the court to say whether the secretary ought or ought not to have allowed the homestead entry while the general order of withdrawal remained unrevoked. It is sufficient for the purposes of this suit to say that in doing so he did not interfere with any legal right of complainant, for the simple reason that complainant had not then acquired any right to the land in controversy in the only mode it could acquire it, namely, by selecting it.

This case is altogether unlike that of *Railroad Co.* v. *Dull,* 10 Sawy. 506, 22 Fed. Rep. 489. There the land in question was within the primary limits of the grant, the title to which became fixed and perfected in the railroad company as of the date of the grant by the definite location of the line of the road; and the court very properly held that the right thus vested could not be affected by any subsequent settlement or entry.

The views above expressed render it unnecessary to decide whether there was such a possession of the disputed premises by other parties than defendants, at the time of the filing of the map of definite location of the line of complainant's road, as brought the land within the exceptions to the grant contained in the act of July 27, 1866. Two other cases, entitled, respectively, *Southern Pac. R. Co.* v. *William B. Walker,*

No. 95, and *Southern Pac. R. Co.* v. *J. M. Patterson et al.*, No. 96, were tried, argued, and submitted together with the present one, and, as they involve substantially the same question, what has been here said will apply to them also. In each case there must be judgment for defendants dismissing the bill.